Filed 6/26/13  P. v. Bracamontes CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B240697 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA387741) |
| v. | |
| JAMES BRACAMONTES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Monica Bachner, Judge.  Affirmed.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Rama R. Maline, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant James Bracamontes appeals from the judgment entered following a jury trial in which he was convicted of attempted voluntary manslaughter, infliction of corporal injury on his child's mother, and assault with a deadly weapon, with weapon-use and great bodily injury findings. Defendant contends the trial court erred by admitting evidence the victim was pregnant during a prior domestic violence incident. We affirm.

## BACKGROUND

Crystal Tarango and defendant had a son who was born in March of 2010. On August 5, 2011, Tarango was sitting on a bed in the Los Angeles home of defendant's aunt. Defendant yelled at her, accused her of cheating on him, and punched her. He continued to punch her all over her head and back, kicked her stomach, back, and sides, and slapped her face more than once. Tarango repeatedly asked defendant to stop and said he was hurting her, but he continued. Defendant said, "'You're going to pay back for what you did to me.'" Tarango attempted to escape from the room, but defendant blocked the door. Tarango asked defendant to stop, saying she did not feel well. Defendant grabbed a 12-inch-long metal pipe and said, "'I'm going to fucking kill you, you fucking whore.'" He struck Tarango on the top and back of her head four or five times before she lost consciousness. She told a sheriff's deputy who interviewed her at the hospital that the pipe was similar to the railing on her hospital bed. The deputy testified the bed railing was two to three inches in diameter and hollow.

Tarango told a deputy that when she regained consciousness she was in the shower, fully clothed. She thought she was unconscious for 10 to 15 minutes. Her vision was blurred and she felt dizzy. She saw defendant get into his brother's car. She went to a phone in another part of the house and called her mother. Her mother and aunt took her to a sheriff's station, where deputies phoned paramedics. Tarango testified at trial that when she regained consciousness defendant apologized, gave her aspirin, attempted to stop her nose from bleeding, and offered to take her to the hospital.

A sheriff's deputy photographed most of Tarango's injuries, and the photographs were introduced at trial. The deputy testified that Tarango was bruised all over her body

2

and face and was in too much pain to move.  Tarango remained in the hospital for two days and was bedridden for two or three weeks as a result of her injuries.  Her blurry vision lasted several weeks.

Pursuant to Evidence Code section 1109, subdivision (a)(1), the prosecutor introduced evidence of two prior instances of domestic violence by defendant against Tarango.  (Undesignated statutory references are to the Evidence Code.)  The first of these occurred on February 3, 2009.  Defendant yelled at Tarango outside of their apartment.  She attempted to run inside, he chased her and shoved her into a brick wall, causing her to strike her head.  He then forcefully took her to another apartment, where responding deputies found Tarango and defendant under a pile of clothing in a closet.  Tarango's forehead, nose, and one eye were bruised and swollen and her hand and wrist were also injured.  Photographs taken by a responding deputy were introduced at trial of the current charge.

The second prior incident occurred October 6, 2009.  Tarango had caught defendant with another woman and decided to move out.  Defendant stood over Tarango as she sat on a bed, kicked her back, punched her three or four times on one arm and shoulder and once in the face, then kicked her side.  Tarango was four months pregnant with defendant's child at that time.  Five days later she went to a sheriff's station to ask for help retrieving her possessions from defendant's apartment.  A deputy took photographs of bruises on Tarango's face, arm, shoulder, and leg, and these were admitted at trial of the current charge.

Defendant did not testify or offer any defense.

The jury acquitted defendant of attempted murder, but convicted him of attempted voluntary manslaughter, inflicting corporal injury on the mother of his child, and assault with a deadly weapon.  The jury found that in the commission of each of these offenses defendant personally inflicted great bodily injury under circumstances involving domestic violence.  It further found that defendant personally used a deadly and dangerous weapon in the commission of attempted voluntary manslaughter and infliction

3

of corporal injury. Defendant admitted he had served a prior prison term within the scope of Penal Code section 667.5, subdivision (b). The court sentenced defendant to 12 years in prison, consisting of five years for attempted voluntary manslaughter, five years for infliction of great bodily injury, and one year each for the weapon-use and prior prison term enhancements.

## DISCUSSION

Defendant sought to exclude evidence that Tarango was pregnant at the time of the October 2009 incident. He argued the pregnancy was both highly prejudicial and irrelevant. The prosecutor argued it was relevant to defendant's state of mind during the charged offense because "[i]f he's willing to assault a pregnant woman, he's probably willing to kill her as well." The prosecutor further noted that Tarango's pregnancy at the time of the prior incident demonstrated the requisite relationship for the corporal injury charge. The trial court stated that it had "weighed it under 352" and concluded that "the probative value outweighs the prejudicial effect." The court noted, "It's a fact about her. It does not appear to be overly prejudicial." The court further noted that it was relevant to establish the element of the relationship between the parties and said, "[T]he jury can do the math."

Notably, the prosecutor did not argue to the jury that Tarango's pregnancy during the prior incident had any relevance to defendant's state of mind in the charged offense.

Defendant contends the trial court erred because, absent evidence that defendant knew at the time of the prior incident Tarango was pregnant, her pregnancy was irrelevant to defendant's state of mind at the time of either the prior incident or the charged offense.

Section 1101 generally prohibits the admission of evidence of other offenses or misconduct to prove criminal propensity, but permits admission of such evidence to prove matters such as motive or intent, or pursuant to other specified statutes, including section 1109. Section 1109, subdivision (a)(1) authorizes the admission of evidence of the defendant's commission of other domestic violence "in a criminal action in which the

4

defendant is accused of an offense involving domestic violence," provided the evidence is admissible under section 352. Evidence admitted pursuant to section 1109, subdivision (a)(1) is admitted to demonstrate a defendant's propensity to commit the charged domestic violence offense, not to prove a matter set forth in section 1101, subdivision (b), such as intent. (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1232.)

Section 352 provides that the court may, in its discretion, exclude relevant evidence if its probative value is substantially outweighed by the probability that its admission will either be unduly time consuming or create a substantial danger of undue prejudice, confusion of the issues, or mislead the jury. The type of prejudice section 352 seeks to avoid is not the damage to a defense that naturally results from relevant evidence, but the tendency to prejudge a person or cause on the basis of extraneous factors. (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

We review any ruling on the admissibility of evidence for abuse of discretion. (*People v. Elliott* (2012) 53 Cal.4th 535, 577.)

The trial court expressly weighed the probative value of Tarango's pregnancy against the risk of undue prejudice. Her pregnancy was relevant to establish that she was the parent of defendant's child, which was an element of the charge of inflicting corporal injury. Although Tarango's subsequent testimony that defendant was the father of her son born in March of 2010 established the requisite relationship for the current offense, the circumstances of her pregnancy at the time of the October 2009 incident established that that incident was also one of "domestic violence," placing it within the scope of section 1109 and allowing the jury to consider it as propensity evidence. The jury was instructed to this effect with CALCRIM No. 852, which told the jury it could consider the prior incidents as propensity evidence only if the prosecution had proved that the incidents constituted "domestic violence," meaning "abuse committed against an adult who is a . . . person with whom the defendant has had a child . . . ." Although other evidence introduced at trial established that Tarango was a former cohabitant of defendant, which would also satisfy the relationship required by the statute, the appellate

5

record does not indicate that the parties had informed the trial court of that relationship. Although defense counsel argued the pregnancy was irrelevant, she did not argue that the prosecutor had other means of establishing the requisite relationship. We review the trial court's ruling "at the time it was made . . . not by reference to evidence produced at a later date." (*People v. Welch* (1999) 20 Cal.4th 701, 739.)

Given that the October 2009 beating did not cause Tarango to miscarry and there was no evidence it resulted in any harm to the child, the trial court could reasonably conclude that evidence of her pregnancy would not create a substantial danger of undue prejudice that would substantially outweigh the probative value of her pregnancy. As the court noted, the jury could "do the math" and determine for itself that Tarango was pregnant at the time of the October 2009 beating, given that her son was born in March of 2010. In addition, the evidence regarding the October 2009 beating depicted it as far less severe than the current offense.

Under the circumstances, we cannot conclude that the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner or that admitting the detail that Tarango was pregnant at the time of the October 2009 beating resulted in a miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

Finally, because the evidence was admitted under section 1109, not section 1101, subdivision (b), it was not necessary to show that defendant knew Tarango was pregnant when he battered her in October of 2009.

6

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

MALLANO, P. J.

We concur:

ROTHSCHILD, J.

JOHNSON, J.

7